RENDERED: DECEMBER 17, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0434-RR

DAWN M. GENTRY                                        APPELLANT

V.                         IN SUPREME COURT

JUDICIAL CONDUCT COMMISSION                 APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

This matter involves an appeal from a decision of the Judicial Conduct Commission which found misconduct on the part of Judge Dawn M. Gentry as charged in ten of twelve charged counts, and ordered that she be removed from office as a circuit judge for the 16th Judicial Circuit, 5th Division, a Family Court division serving Kenton County. Judge Gentry appeals, raising multiple claims of error. Finding no error warranting reversing the Commission's Final Order, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Judge Gentry was appointed by Governor Matthew G. Bevin in December 2016. Ky. Exec. Order 2016-904. Due to the timing of her appointment, Judge Gentry stood for election in 2018.

Following her successful candidacy, a complaint was filed with the Judicial Conduct Commission alleging that she had used her judicial role to coerce attorneys who served as guardians ad litem (GAL) in her court to support her campaign, by either serving on her campaign committee or contributing money, had asked in the courtroom for a yard sign placement and had utilized court staff to perform campaign work during work hours.

Over the following months, additional allegations ensued, resulting in a twelve-count Formal Proceeding being brought against her. The original Notice of Formal Proceedings and Charges was filed in November 2019 and consisted of nine counts. In July 2020, an amended Notice was filed adding three additional counts.

Count I related to the actions occurring during Judge Gentry's 2018 campaign, noted above: 1) coercing members of her GAL panel to donate the maximum amount to the campaign and to use personal time to engage in campaigning on her behalf; 2) requiring GAL panel members to serve on her campaign finance committee; 3) in court, soliciting an attorney to put up a campaign sign; 4) utilizing court staff to work on her campaign during work hours, by placing and delivering campaign signs and having her case management specialist/mediator write thank-you notes for the campaign and publicly holding a campaign sign on Election Day, and taking steps to conceal this conduct; and 5) appointing attorney Delana Sanders to Judge Gentry's GAL panel in exchange for Ms. Sanders' husband's agreement to support the campaign. The Count charged that these actions violated Canon 1, Rules 1.1

2

and 1.2; Canon 2, Rules 2.1, 2.2, 2.3(A), and 2.13(A); Canon 3, Rule 3.1(D); and Canon 4, Rules 4.1(A) and 4.1(B).[1]

The Commission found Judge Gentry committed the actions charged in 1) and 4), above, based on her Amended Answer and Stipulations in which she acknowledged violating Rules 1.2, 1.3 and 3.1(D), and on the testimony of attorneys Michael Hummel and Katherine Schulz. The Commission noted that "[b]ased on [Judge Gentry's] testimony and the totality of the evidence presented, [she] had clear expectations of the level of participation by her panel members as to time, energy, effort and money contributed . . . and insufficient participation led to retaliation." As a result, the Commission found violation of Rules 1.1, 1.2, 2.1, 3.1(D), and 4.1(B).

Count II alleged Judge Gentry, during or following the 2018 election, did the following: 1) retaliated against one of her staff, Meredith Smith, for not sufficiently supporting the campaign; 2) retaliated against attorney Mike Hummel for failing to make the maximum monetary donation to the campaign and declining to campaign on her behalf by removing Hummel from the GAL panel following the election; 3) retaliated against attorneys who did not support her campaign by delaying hearing dates for their cases; and 4) retaliated against school liaison officer Kelly Blevins for supporting Judge Gentry's opponent in the election. The Count charged that these actions violated Canon

---

[1] The Canon and Rules are set out in the Code of Judicial Conduct. Kentucky Rules of the Supreme Court (SCR) 4.300.

1, Rules 1.1 and 1.2, Canon 2, Rules 2.2, 2.3(A), 2.3(B), 2.4(B), 2.6(A), 2.8(B), 2.11(A) and 2.13(A), and Canon 3, Rule 3.1(D).

The Commission found Judge Gentry retaliated against Hummel for failing to campaign on her behalf. The Commission did not find that the retaliation was for not contributing and did not find by clear and convincing evidence the other actions charged. The Commission found that the retaliation against Hummel violated Rules 1.1, 1.2, 2.2, 2.3(A), 2.4(B) and 2.13(A)

Count III charged that Judge Gentry engaged in the following conduct during office hours: 1) filled out and approved a false timesheet for Meredith Smith; 2) left the courthouse on numerous occasions with Stephen Penrose and Ms. Aubrey during regular court hours, leaving the office without any staff coverage; 3) knowingly approved inaccurate timesheets for Mr. Penrose and Ms. Aubrey that Judge Gentry knew did not accurately reflect the hours those employees worked; 4) brought her children to work and, on one occasion, one of her children witnessed a confidential proceeding and recognized the child involved in the proceeding, violating the confidentiality of proceedings in a family court case; 5) permitted Mr. Penrose to spend work hours playing his guitar and singing in his office, disrupting other court employees during the workday; and 6) permitted staff to store and consume alcoholic beverages in court offices and at times Judge Gentry consumed alcoholic beverages in the courthouse. The Count charged that these actions violated Canon 1, Rules 1.1 and 1.2, and Canon 2, Rules 2.1, 2.5(A), 2.12(A) and 2.13(B).

4

As to Count III, Judge Gentry admitted approving timesheets she knew to be inaccurate, leaving the courthouse during the workday on numerous occasions. The Commission found that Judge Gentry committed the actions described in 1) as to approving an inaccurate timesheet for Smith, 2), 3), 5) and 6) although not as to Judge Gentry herself consuming alcoholic beverages in the courthouse. The Commission found that these actions violated Rules 1.1, 1.2, 2.1, 2.5(A), 2.12(A), and 2.13(B).

In Count IV, the Commission alleged that Judge Gentry 1) directed Kelly Blevins and other school liaison officers to file school dependency, neglect, and abuse cases only once per month and only to file certain petitions as truancy cases rather than dependency, neglect, and abuse cases, and when Ms. Blevins followed her employer's instructions regarding how to file such cases, Judge Gentry retaliated against her; and 2) following these actions, Judge Gentry refused to recuse herself from Ms. Blevins' cases, despite having previously expressed personal animosity toward Ms. Blevins. The Count charged that these actions violated Canon 1, Rules 1.1 and 1.2; and Canon 2, Rules 2.3(A), 2.3(B), 2.8(B), and Rule 2.11(A).

Judge Gentry, in her Amended Answer and Stipulations, admitted the Commission's factual allegations, although denying the conclusions. At the hearing, Smith testified that Judge Gentry referred to Blevins as "bitch," and Judge Gentry acknowledged she probably did so. Judge Gentry further admitted her conduct towards Blevins violated the Canons. The Commission found these actions violated Rules 1.1, 1.2, 2.3(A), 2.3(B), 2.8(B) and 2.11(A).

5

Count V charged that on multiple occasions, Judge Gentry held pretrial conferences in dependency, neglect, and abuse cases with members of her GAL panel to which private attorneys who represented parties in those cases were not invited and substantive decisions were made during these conferences, which were not held on the record. The Count charged that these actions constituted misconduct in office and violated Canon 1, Rules 1.1 and 1.2; and Canon 2, Rule 2.9. The Commission found that Judge Gentry did not commit the acts alleged in Count V.

In Count VI, the Commission alleged that Judge Gentry: 1) made inappropriate and unwanted sexual advances toward a female attorney;[2] 2) after making these unwelcomed sexual advances Judge Gentry sent one of her GAL panel attorneys to speak with the attorney, accusing her of gossiping about Judge Gentry and of taking GAL assignments in Boone County. This conduct was reasonably interpreted as warning the attorney to remain quiet regarding the sexual advances; 3) following these events, Judge Gentry refused to recuse from cases in which the attorney represented a party; and 4) engaged in Snapchat conversations with members of her GAL panel and Penrose, some of which were sexual in nature. The Count charged these actions constituted misconduct in office and violated Canon 1, Rules 1.1 and 1.2; Canon 2, Rules 2.2, 2.3(B), 2.8(B), 2.11(A), 2.12(A); and Canon 3, Rules 3.1(C) and 3.1(D).

The proof regarding this count was that Judge Gentry's conduct was inappropriate but not "unwanted." Judge Gentry, however, admitted to

---

[2] The attorney in question served on Judge Gentry's GAL panel.

refusing to recuse on cases involving the attorney, and that her conduct violated Rules 1.2, 1.3 and 2.11. Judge Gentry argues that the proof was insufficient to establish the allegations in 2) and disputes 4) as well. The proof on these issues was established by testimony at the hearing and by Snapchat messages. The Commission found violations of Rules 1.1, 1.2, 2.2, 2.3(B), 2.8(B), 2.11(A), 2.12(A), 3.1(C) and 3.1(D).

Count VII alleged inappropriate conduct on Judge Gentry's part with respect to Penrose, specifically: 1) hiring him because the two were engaged in a personal, sexual relationship, not on the basis of merit, and terminating Meredith Smith by forcing her to resign to create a job opening for Penrose; 2) engaging in inappropriate workplace behavior with Penrose during work hours, including sexual activity with Penrose and Aubrey in a courthouse office; and 3) improperly delegating judicial functions to Penrose. The Count charged these actions constituted misconduct in office and violated Canon 1, Rules 1.1 and 1.2; Canon 2, Rules 2.1, 2.2, 2.4(B), 2.12(A), 2.13(A); and Canon 3, Rules 3.1(A) and 3.1(C).

The proof on this Count was provided by Judge Gentry's Amended Answer and Stipulations, her testimony at the hearing, and romantic and sexual text messages from Penrose to Judge Gentry. Aubrey testified as to simulated sexual activity at the courthouse during work hours, as to which Judge Gentry admittedly was present. Testimony also established that Penrose, a non-attorney, was permitted to speak on behalf of Judge Gentry.

7

The Commission found that these actions violated Rules 1.1, 1.2, 2.1, 2.2, 2.4(B), 2.12(A), 2.13(A), 3.1(A) and 3.1(C).

In Count VIII, the Commission alleged hiring and appointment of court staff not based on merit, specifically that Judge Gentry 1) appointed GAL panel members not based on merit and assigned cases to them before they had any GAL training; and 2) appointed personal friends who supported her campaign to the "Permanent Custody Roster" to represent individuals seeking de facto custodian status without requiring those individuals to come to court to receive appointments and, on occasions, passed out these individuals' business cards. The Count charged these actions constituted misconduct in office and violated Canon 1, Rules 1.1 and 1.2; and Canon 2, Rule 2.13(A).

The Commission found that part 1) above was not proven by clear and convincing evidence. As to part 2), the Commission relied on Judge Gentry's Amended Answer and Stipulations as an admission that "I do admit that the very qualified family law attorneys that I appointed . . . were also friends. I did issue appointments by written order to these attorneys instead of giving in-person appointments[.]"[3] In her testimony before the Commission, Judge Gentry admitted the three attorneys appointed were close personal friends; she had not requested or required applications prior to making the appointments; and she did not advise attorneys or litigants of the relationship at the time of

_____

[3] Judge Gentry's order appointing the three attorneys, entered November 28, 2018, provided that these appointments were "for the purpose of representing custodians claiming de-facto custodian status per KRS 620.100(1)(c) and who are unable to afford counsel pursuant to KRS Chapter 31."

8

appointment. The Commission found that Judge Gentry violated Rules 1.1, 1.2, and 2.13(A).

Count IX alleged that Judge Gentry had failed to be candid and honest with the Commission regarding the appointment of attorney Sanders, the firing of Smith and Hummel, as well as the quality of Mr. Hummel's work. The Count charged these actions constituted misconduct in office and violated Canon 1, Rules 1.1 and 1.2; and Canon 2, Rule 2.16(A).

The Commission did not find any violation with respect to Sanders, but did find a violation as to being candid and honest on matters regarding Smith and Hummel. Judge Gentry does not contest these findings. The Commission found these actions violated Rules 1.1, 1.2 and 2.16(A).

Count X charged Judge Gentry with failure to be candid and honest with the Commission, specifically regarding her relationship with Penrose based on her testimony at the January 2020 temporary removal hearing, and having her staff destroy and shred documents in chambers. The Count charged these actions constituted misconduct in office and violated Canon 2, Rule 2.16(A).

The Commission found that the allegations as to the shredding of documents were not proven by clear and convincing evidence. As to the failure to be candid and honest regarding her relationship with Penrose, Judge Gentry admitted as much at the final hearing. Also, the fact that she received, retained and hid sexual and romantic texts received from Penrose constitutes, at a minimum, circumstantial evidence that her relationship with Penrose was

9

more than she initially admitted. The Commission found these actions violated Rules 1.1, 1.2 and 2.16(A).

In Count XI, the Commission alleged Judge Gentry retaliated against an individual who had cooperated with the Commission in the investigation as to Judge Gentry's conduct. The specific conduct was that Judge Gentry filed a bar complaint in December 2019 against attorney Katherine Schulz based on conduct which had occurred over a year before, and which complaint was filed three days after Judge Gentry filed her answer to the Commission's original Notice of Formal Proceedings and Charges. The Count charged these actions constituted misconduct in office and violated Canon 2, Rule 2.16(B).

Judge Gentry admitted the relevant facts in her hearing testimony but claims that she was "compelled" to file the complaint due to questions asked at her Temporary Removal hearing in January 2020. The bar complaint against Schulz, however, was filed in the previous month, December 2019, three days after Judge Gentry filed her answer. Proof at the hearing showed that the bar association determined that the "complaint does not state an ethical violation[.]" The Commission determined that these facts violated Rule 2.16(B).

And, finally, in Count XII, the Commission alleged Judge Gentry's failure to disclose on the record a personal relationship with an attorney appearing as counsel in cases before the judge. The Count charged that these actions constituted misconduct in office and violated Canon 1, Rules 1.2; and Canon 2, Rules 2.2, 2.3(A), and 2.4(B). The Commission found that the charge was not proven by clear and convincing evidence.

10

In January 2020, the Commission held a hearing, pursuant to SCR 4.020(1)(a)(ii), and ordered Judge Gentry temporarily suspended from acting in her official capacity pending final adjudication of formal proceedings. The trial of the charges was originally scheduled for April 20, 2020. Due to the COVID-19 pandemic, the trial was postponed and ultimately held August 10-14. On July 17, the Commission filed an Amended Notice of Formal Proceedings and Charges, adding the three additional counts.

Following the week-long hearing, the Commission entered its Findings of Fact, Conclusions of Law and Final Order. The Commission found that Judge Gentry, based on clear and convincing evidence, had violated the Code of Judicial Conduct and engaged in the misconduct alleged in 10 of the 12 counts charged.

The Commission determined that removal was the appropriate sanction. Judge Gentry timely filed this appeal. SCR 4.270.

## II. STANDARD OF REVIEW.

In proceedings before the Commission, charges are required to be proven by clear and convincing evidence. SCR 4.160. On appeal to this Court, we "must accept the findings and conclusions of the commission unless they are clearly erroneous; that is to say, unreasonable." *Wilson v. Judicial Ret. & Removal Comm'n*, 673 S.W.2d 426, 427–28 (Ky. 1984); *Long v. Judicial Ret. & Removal Comm'n*, 610 S.W.2d 614 (Ky. 1980). By rule, on any judge's appeal, we have broad power to "affirm, modify or set aside in whole or in part the

11

order of the Commission, or to remand the action to the Commission for further proceedings." SCR 4.290(5).

## III. ANALYSIS.

In her appeal, Judge Gentry raises a number of arguments: the composition of the Commission, pretrial issues, evidentiary matters, the sufficiency of the proof before the Commission and the reasonableness and proportionality of the penalty. We address these arguments in turn.

### A. *Claims regarding Composition of the Commission.*

Judge Gentry makes three related arguments regarding composition and function of the Commission: (a) the Commission was unlawfully composed by the absence of one of the lay members; (b) the Commission impermissibly combined the investigative and adjudicative function; and (c) the Commission erred in not disqualifying member Karen Thomas.

1. <u>Absence of One Lay Member</u>. On the day Judge Gentry's hearing began, the Chairman advised that one of the two non-attorney lay members would not be participating. Judge Gentry objected, which objection was overruled. Before us, she argues that, under the Kentucky Constitution, she was entitled to have her removal hearing decided by a tribunal constituted as constitutionally mandated.

In 1976, with the revision of the judicial article, the Kentucky Constitution created the Commission and established its composition: three judges, one each from the Court of Appeals, Circuit Court and District Court; one member of the bar; and two persons, not members of the bench or bar,

12

appointed by the Governor. Ky. Const. § 121. This section also importantly gave this Court the authority to establish the rules of procedure for the Commission. *Id.* One such rule provides:

> A quorum shall be 4 members. The Commission may act by majority vote of members present; however, the affirmative vote of at least 4 members shall be required for the suspension, removal or retirement of a judge for good cause. Absence of a member or a vacancy upon the Commission shall not invalidate its action. If because of disqualification or other inability of members and alternates to serve, a quorum cannot be achieved, the Chairperson shall certify that fact to the respective appointing authorities for selection of sufficient special members to bring the Commission to full membership in the matter. . . .

SCR 4.120. In addition, "[i]n a hearing before the Commission, not less than 5 members shall be present when the evidence is produced." SCR 4.220(3).

While Judge Gentry argues that mere procedural rules cannot supersede the plain language of the Constitution, we note that the procedural rules are specifically authorized by that very same constitutional provision. Ky. Const. § 121. Furthermore, safeguards are built in to protect a judge's rights. As previously mentioned, charges are required to be proven by clear and convincing evidence, SCR 4.160, and the affirmative vote of four members is required for suspension or removal. SCR 4.120. So, in this case, instead of the vote of four of six members (67%), the removal vote was required of four of five members (80%). Or, stated another way, the nonparticipation of one member was essentially a vote against any violation by or sanction on Judge Gentry. The Commission was constitutionally composed notwithstanding the nonparticipation of one lay member.

13

2.  Combination of Investigative and Adjudicative Functions. Judge

Gentry argues that we should reevaluate the holding in *Nicholson v. Judicial*

*Retirement & Removal Comm'n,* 562 S.W.2d 306 (Ky. 1978), which upheld the

combined investigative and adjudicative functions of the Commission. As

recently as 2012, we upheld this combination of functions. *Alred v.*

*Commonwealth, Judicial Retirement Comm'n,* 395 S.W.3d 417, 428-29 (Ky.

2012). Both *Nicholson* and *Alred* cite as authority *Withrow v. Larkin,* 421 U.S.

35 (1975), in which the Court held that combination of these two functions

"does not, without more, constitute a due process violation[.]" 421 U.S. at 58.

The "more" requires allegation and proof of pecuniary reward or demonstration

that the Commission or one of its members was so incensed or biased against

the judge as to be unable to perform its functions in accordance with the rules

of the forum. *Alred,* 395 S.W.3d at 428. As in *Alred*, Judge Gentry offers no

persuasive evidence to overcome the presumption of lack of bias. Therefore, we

find no violation of Judge Gentry's constitutional rights.

3.  Failure to Disqualify Alternate Commission Member Thomas.

Judge Gentry complains that the Commission denied her motion to remove

District Judge Alternate member, Karen Thomas. This argument is based on

two allegations. First "that Judge Thomas was overheard discussing or

deliberating the substance of the evidence and proceedings off the record

during a recess," specifically a witness' claim regarding Judge Gentry's staff

improperly shredding documents. Secondly, Judge Thomas persisted in

14

questioning a witness on matters touching on Judge Gentry's sealed divorce file.

Judge Gentry miscomprehends the nature of Commission proceedings. As noted, the Commission properly combines investigative and adjudicative functions. At early stages of any Commission investigation, the members may be exposed to allegations based on hearsay or an improper source; may receive allegations from anonymous sources; or may read or hear about questionable judicial conduct through print, audio, visual, or social media. Depending on the allegations, the Commission decides whether to dismiss, investigate further, or request a judge attend an informal conference. The vast majority of complaints are dismissed upon initial consideration.[4] The fact that Commission members may be exposed to inadmissible evidence or extraneous matters is not unlike any number of judicial proceedings in which judges rule on evidentiary matters but then also serve as fact-finders and render judgments. *See* KRS[5] 403.010 (no juries in divorce, alimony or maintenance proceedings); KRS 610.070(1) (no juries in juvenile proceedings). At any final hearing, however, only evidence admissible under the Kentucky Rules of Evidence (KRE) shall be received, SCR 4.240, the proof against any judge must

---

[4] In its 2019-20 Annual Report, the Commission reported consideration of 248 complaints, of which 227 were "concluded," and only 6 resulted in imposed sanctions (two private admonitions, one private reprimand, two public reprimands, and one permanent retirement). https://kycourts.gov/commissionscommittees/JCC/ Documents/Public_Information/JCFY20192020.pdf (accessed Nov. 25, 2020).

[5] Kentucky Revised Statutes.

15

rise to the level of clear and convincing evidence, and at least sixty-seven percent of the Commission (4 of 6, or as in this case, 4 of 5) must agree.[6]

We hold that the Commission did not err in failing to recuse Judge Thomas. We also note that although Judge Thomas attended and participated in the hearing, she, as the alternate district court member, did not deliberate or vote as a member following the production of all the proof.

### B.  Alleged Errors Concerning Counts X and XI.

Judge Gentry asserts two arguments concerning the final three counts against her. One, that the late addition of these counts, approximately three weeks prior to Judge Gentry's final hearing, constituted vindictive prosecution, and two, that the Commission erred in refusing to sever or continue the hearing with respect to these counts. Count X alleged failure to cooperate and be candid and honest with the Commission regarding Judge Gentry's personal relationship with her employee, Stephen Penrose, during and after the January 2020 temporary removal hearing. Count XI alleged retaliation against an attorney known by Judge Gentry to have assisted or cooperated with the Commission. Significantly, the addition of Counts X and XI was made pre-hearing.[7]

---

[6] While the Commission quorum requirement is generally four members, SCR 4.120, "[i]n a hearing before the Commission, not less than 5 members shall be present when the evidence is produced." SCR 4.220(3).

[7] Judge Gentry included Count XII as a part of these arguments. As previously noted, the Commission unanimously determined that Count XII was not proven by clear and convincing evidence. Any allegations or claims with respect to this Count are therefore moot and do not merit further discussion.

1. Vindictive Prosecution.

The prohibition against vindictive prosecution arises from the 14th Amendment's Due Process Clause, *North Carolina v. Pearce*, 395 U.S. 711, 723-25 (1969), and is based on the principle that a criminal defendant should not be penalized for exercising a right to appeal or collaterally attacking a first conviction. *Id.*; *see also Thigpen v. Roberts*, 468 U.S. 27 (1984); *United States v. Goodwin*, 457 U.S. 368 (1982); *Blackledge v. Perry*, 417 U.S. 21 (1974).[8] Countervailing against this principle are the ideas that all criminal prosecutions involve, to some degree, a need to penalize someone for criminal conduct, *Goodwin*, 457 U.S. at 372, and the prosecution is entitled to reexamine charges as new evidence comes to light during the course of proceedings. *Id.* at 381. As to this latter point, the Court in *Goodwin* explicitly noted:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.

---

[8] The Commission argues that vindictive prosecution is a criminal law construct inapplicable in civil administrative proceedings. As noted in *Alred*, a judicial conduct proceeding is not a criminal matter. 395 S.W.3d at 427. The United States Supreme Court has never held that the prohibition of vindictive prosecution applies to civil or administrative proceedings. *Gilbert v. N.C. State Bar*, 363 N.C. 70, 78, 678 S.E.2d 602, 607 (2009). The Sixth Circuit Court of Appeals has, however, discussed the principle in the context of administrative hearings. *See Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 722–23 (6th Cir. 1999). As noted herein, even were we to agree that vindictive prosecution could apply to these proceedings, it did not occur in this case.

*Id.* at 381. The Court rejected a claim that amending a charge in response to procedural motions gives rise to a presumption of vindictiveness. *Id.; see also United States v. Poole*, 407 F.3d 767, 777 (6th Cir. 2005) (stating "the government has adequately rebutted any presumption of vindictiveness by showing that its decision to re-indict was not motivated by a vindictive desire to punish the defendant for exercising his right to trial, but rather a re-evaluation of the case, in light of all the evidence elicited[]").

Judge Gentry complains that charges, Counts X and XI, were added following her submission of pretrial motions. In applying the foregoing principles to this case, pretrial motions of the sort filed by Judge Gentry do not give rise to a presumption of vindictive prosecution. In our view, the addition of the charges flowed from the Commission's desire to resolve all matters arising from the allegations against Judge Gentry.

2. <u>Failure of Commission to Sever or Grant Continuance</u>.

SCR 4.190 contemplates that the Notice of Charges may be amended, either before or after the hearing. The rule further provides that "[i]n case such an amendment is made, the judge shall be given reasonable time both to answer the amendment and to prepare and present his defense against the matters charged thereby." *Id.* Judge Gentry argues that the Commission erred in failing to continue the case due to the short time prior to the scheduled hearing. We disagree.

Counts X and XI both related to facts and circumstances that had been previously discussed and addressed by both the Commission and Judge

18

Gentry: her relationship with and hiring of Penrose, and her filing a bar complaint against attorney Schulz. In both instances, Judge Gentry eventually acknowledged that she had engaged in the misconduct alleged. No error occurred.[9]

### C. *Failure to Dismiss Counts I and II Relating to 2018 Campaign.*

Judge Gentry argues that Counts I and II were required to be dismissed by the Commission since they both implicated campaign conduct occurring at or prior to her November 2018 election. Her argument is based on a straightforward reading of SCR 4.025(2), which provides,

> For any violation related to campaign conduct in a primary or general election, the authority of the Commission to take action shall be barred unless notice of preliminary investigation pursuant to SCR 4.170 has been issued by the Commission within 180 days of the date of the general election following the campaign as to which the conduct relates.

The Commission denied the motion based on counsel's argument that the conduct in question involved more than mere campaign conduct, *i.e.*, violations of Rules under Canons 1 and 2 relating to compliance with the law, avoiding impropriety and the appearance of impropriety, and abuse of judicial office to coerce others into helping Judge Gentry. We agree with the Commission, but on different grounds.

As to Count I, Judge Gentry's motion to dismiss before the Commission attached the Commission's January 22, 2019 letter of preliminary investigation in JCC Case No. 2019-017. This letter, alleging the campaign violations in

---

[9] *Snodgrass v. Commonwealth*, 814 S.W.2d 579 (Ky. 1991), cited by Judge Gentry, does not compel a different result.

19

what became Count I, was clearly sent within the time frame required by SCR 4.025(2). Judge Gentry responded by letter eight days later. In her affidavit supporting her motion to dismiss, Judge Gentry averred, "[t]he current case, JCC Case Number 2019-017, before this Commission was initiated more than 180 days after the general election. The initial letter sent to me by the Commission was dated June 24, 2019. This was 230 days after the general election." This quotation, referring to the same JCC Case Number 2019-017 in both the January and June letters, is sufficient proof that the Commission's original investigation was ongoing. While Judge Gentry alleged the original January investigation had been concluded with no further action, she omitted any documentation from the Commission to support that claim. The Commission complied with the requirement of giving notice of preliminary investigation within the time period required by SCR 4.025(2).

As to allegations in Count II, and while they involve an attorney's failure to support Judge Gentry's campaign, the judicial misconduct was her **post - election retaliation** against that attorney by removing him from the GAL list. We therefore agree with the Commission that the allegations within Count II were not subject to the 180-day rule within SCR 4.025(2).

### D. Prejudicial Denial of Discovery.

On June 16, 2020, Judge Gentry served discovery on the Commission: fourteen interrogatories, nine categories of documents, sixteen requests per admission, and two requests for depositions. The Commission denied these requests. Judge Gentry, citing to SCR 4.160's incorporation of the Rules of

20

Civil Procedure, argues that the Commission erred in denying these discovery requests, since CR 26 (general discovery provisions), 30 (depositions), 33 (interrogatories) and 36 (requests for admissions) authorize same. The Commission responds that written discovery requests and discovery depositions are not authorized, and that a judge's procedural rights are governed by SCR 4.210. This rule grants judges the right to introduce evidence, to be represented by counsel, to present and cross-examine witnesses, and to issue subpoenas. In addition, as a matter of practice, the Commission presents all judges with the investigative file. In this case, that file consisted of 94 documents.

Judge Gentry's claim of prejudice relates to her claims of violation of marital-privileged material, failure to depose Judge Mehling as to the propriety of Judge Gentry's rulings,[10] the Commission's investigator's actions, and Judge Thomas' actions and bias. These allegations of prejudice are unfounded. As addressed below, no marital privilege was violated. Judge Mehling's testimony at the final hearing was not essential to the finding of any violations. Judge Thomas, as the district court alternate, did not participate in the Commission's final decision. And, Judge Gentry simply makes no credible argument that the Commission's investigator somehow violated her rights.

---

[10] From Judge Gentry's brief, she seems to want to blame much of her troubles on Judge Mehling and the dysfunction and/or animosity between their two offices. As noted, Judge Mehling's testimony was limited and was not essential to the findings of any violations. Further, as argued by the Commission, Judge Gentry included Judge Mehling on her witness list. Judge Gentry's actions were her own, as proven by clear and convincing evidence.

21

### E. Violation of Marital Privilege.

Judge Gentry complains that the Commission investigator violated the husband-wife privilege afforded by KRE 504(b) in interviewing her recently divorced spouse. Judge Gentry and her spouse were divorced on September 27, 2019. While Judge Gentry complains generally about investigative interviews of her ex-spouse, she acknowledges that he was not called to testify at the final hearing, so the only issue involves electronic documents which Judge Gentry alleges were taken by her ex-spouse from her phone: romantic and sexual text messages, photos, Snapchat screens, and an email thread forwarded from the judge to her spouse. Logically, the items accessed were not the sort of items that Judge Gentry would have readily communicated or shared with her ex-spouse, which supports the Commission's position that he procured them through their child's cell phone. The Commission further counters that the marital privilege only extends to testimony at trial and not to investigations, and that whatever evidence was procured through Judge Gentry's ex-spouse was derived through Judge Gentry's saving those items in such a way that they could be accessed through their minor child's cell phone. We agree with the Commission.

The privilege set out under KRE 504(b) provides that "[a]n individual has a privilege . . . to prevent another from testifying to any confidential communication made by the individual to . . . her spouse during their marriage." The rule further provides that "[a] communication is confidential if

22

it is made privately by an individual to . . . her spouse and is not intended for disclosure to any other person." *Id.*

In this case, Brian Gentry did not testify. A number of items represented as having been procured from the Gentry's minor daughter's cell phone were introduced into evidence. Judge Gentry argues that these matters were obtained by her ex-spouse due to the marital relationship, *i.e.*, he would not have been in a position to obtain but for the fact of the marriage.

Testimonial privileges are generally disfavored and are strictly construed. *Stidham v. Clark*, 74 S.W.3d 719, 722–23 (Ky. 2002) (citing *Slaven v. Commonwealth*, 962 S.W.2d 845, 853 (Ky. 1997)). As best we can ascertain, Judge Gentry's argument is that her ex-spouse's access to their child's cell phone implicates the marital relationship. In other words, a communication from mother to child to father/ex-spouse. We are unwilling to stretch the privilege to the extent argued by Judge Gentry. Once the communication was available to the child, the marital privilege was waived and no longer protected.

### F. Sufficiency of Proof.

Judge Gentry argues two points with respect to the sufficiency of the proof. First, that findings or conclusions were not supported by the proof. And, second, that the verdict or conclusions violate SCR 4.190 and due process.

1. Adequacy of Proof. Judge Gentry takes issue with the adequacy of proof on a number of counts, although on others she admits to engaging in the

23

conduct alleged. Admittedly, the standard of proof before the Commission is "clear and convincing" evidence, which obviously requires more than a preponderance of the evidence. As to the required standard of proof, in *Commonwealth, Cabinet for Health & Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010), we stated that "[c]lear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people[]" (internal quotations and citations omitted). Even under this heightened burden of proof, we still adhere to a clearly erroneous standard of review. CR 52.01. As a result, we as an appellate court are obligated to give a great deal of deference to the Commission's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them. *T.N.H.*, 302 S.W.3d at 663.

Under this standard of review, and having reviewed counsel's arguments as well as the extensive record, we are unable to say that the Commission's findings were not supported by clear and convincing evidence.

2. <u>Violation of SCR 4.190 and Due Process</u>. Judge Gentry argues that in seven instances the Commission found violations by deviating from a qualifying word in the Formal Charge, and thereby violated SCR 4.190 and due process.

The amendments of which Judge Gentry complains are a) Count I was amended by the Commission's finding that GAL members were required to

24

contribute to the campaign, albeit not the maximum as charged; b) Count II was amended because the Commission found that Judge Gentry retaliated against attorney Hummel because he did not campaign on her behalf; but it was not proven that the retaliation occurred because he did not contribute; c) Count III was amended because the Commission found Judge Gentry approved a false timesheet for Meredith Smith, but did not also "fill it out" as originally charged; d) Count III was amended because the Commission found Judge Gentry permitted staff to store and consume alcohol in court offices, but not that Judge Gentry consumed alcohol herself; e) Count VI was amended because the Commission found Judge Gentry engaged in inappropriate sexual advances with an attorney on her GAL list, but not that the advances were unwanted; f) Count VII was amended because Commission found Judge Gentry hired Penrose because she was engaged in a personal relationship with him, as opposed to a personal sexual relationship with him; and g) Count IX was amended because the Commission found Judge Gentry had not been candid and honest regarding the firing of Meredith Smith and Michael Hummel and Hummel's quality of work; but had found the allegation regarding Delana Sanders was not proven.

SCR 4.190 provides,

> The notice or answer may be amended to conform to proof or to set forth additional facts, whether occurring before or after the commencement of the hearing. In case such an amendment is made, the judge shall be given reasonable time both to answer the amendment and to prepare and present his defense against the matters charged thereby.

25

Notwithstanding its creativity, Judge Gentry's argument does not address the multiple serious violations committed in each count. Further, in the event of amendment to conform to the proof, the rule affords a judge a reasonable time to address the amendment; it does not require dismissal. No violation of SCR 4.190 nor of due process occurred.

### G. *Proportionality of Penalty Imposed.*

Finally, we address Judge Gentry's argument that the penalty of removal was unreasonable and disproportionate to the Commission's findings. In mitigation of the sanction, Judge Gentry points to the toxic atmosphere in the Kenton County Courthouse, especially with her fellow family court judge and between their respective staffs, her short time and relative inexperience in office, her lack of prior disciplinary complaints, and her admitting fault and contrition. And, Judge Gentry compares her misconduct to that of other judges over the years, those who were removed and those who were not.

This Court has upheld the Commission's removal of a judge in a number of cases over the years. Typically, removal stems from a deliberate course of action or numerous examples of separate violations of the Code of Judicial Conduct. *See, e.g., Alred,* 395 S.W.3d 417 (upholding judge's removal from office following findings of official misconduct on eight charges (representing separate events)); *Starnes v. Judicial Retirement & Removal Comm'n,* 680 S.W.2d 922 (Ky. 1984) (upholding judge's removal from office for chronic and pervasive absence from court and inattention to business of office, and for refusal to disqualify over cases involving close personal friends); *Wilson v.*

26

*Judicial Retirement & Removal Comm'n,* 673 S.W.2d 426 (Ky. 1984) (upholding judge's removal from office for course of conduct, intentionally and wrongfully misusing judicial power, to assist close friend, and separate count of dismissing case following *ex parte* meeting with defendant); *Kentucky Judicial Conduct Comm'n v. Woods,* 25 S.W.3d 470 (Ky. 2000) (noting multiple instances of judicial abuse which justified district court judge's removal from office (although judge in question had not appealed the Commission's order removing him from office)).

As Gentry correctly points out, relying on *Nicholson,* 562 S.W.2d 306, the purpose of the Commission's proceedings is "to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation." *Id.* at 308. In this regard, the Commission and its proceedings serve an important educational purpose. Judge Gentry also cites cases in which a judge received a sanction less than removal for egregious conduct. *Gormley v. Judicial Conduct Comm'n,* 332 S.W.3d 717 (Ky. 2010); *Thomas v. Judicial Conduct Comm'n,* 77 S.W.3d 578 (Ky. 2002); *Long v. Judicial Retirement & Removal Comm'n,* 610 S.W.2d 614 (Ky. 1980). In our view, none of these three cases support the result advocated by Judge Gentry.

In *Gormley*, the Commission found three counts against the judge, one for an egregious misapplication of criminal contempt, one for bad faith application of the law with respect to a change in custody, and one for

27

erroneous entry of a standing order prohibiting the filing of certain motions for modification of child support. For these three events, Judge Gormley was suspended for 45 days and received a public reprimand. In *Thomas*, the judge was found guilty of four counts: engaging in *ex parte* communications with a criminal defendant and his attorney; impermissibly requesting a state trooper to do a personal favor by being present during the moving of the judge's girlfriend's belongings from the home of her ex-boyfriend; threatening the ex-boyfriend; and misrepresenting a material fact to the Commission. The Court upheld a 180-day suspension of Judge Thomas. 77 S.W.3d at 582.[11] Finally, in *Long*, the Court stated that "[i]n a nutshell, the Commission found that Judge Long knowingly used his office as district judge to protect the bootlegging industry in Morgan County." 610 S.W.2d at 614. Unfortunately, any in-depth analysis of Judge Long's actions and misconduct is not possible, since the Court chose not to provide any additional detail, and, at that time, the Commission's proceedings were confidential.[12]

While each of the aforesaid judges was convicted of fewer counts than Judge Gentry, an inherent difficulty exists in comparing misconduct of different judges. That noted, however, Judge Gentry minimizes the extent of

---

[11] We note that three justices dissented on the count regarding the personal favor requested of the state trooper, 77 S.W.3d at 582-86 (Keller, J., dissenting) and one of these three further dissented on the count as to the misrepresentation. *Id.* at 586-87 (Graves, J., dissenting). These justices would have remanded to the Commission to reconsider the sanction.

[12] Additionally, as in *Thomas*, we observe that the three members of the Court dissented that the allegations against Judge Long were not proven by clear and convincing evidence, other than a failure to enforce the provisions of KRS 242.410, and would have imposed a lesser sanction. 610 S.W.2d at 615. (Aker, J., dissenting).

28

her misconduct. Quoting from the Commission's final Order, we note the multiple bases for its decision:

> [Judge Gentry's] conduct has violated numerous requirements of the Judicial Canons, including the following:
>
> • Failing to perform the duties of her judicial office fairly and impartially (Canon 2, Rule 2.2) and without bias or prejudice (Canon 2, Rule 2.3(A) and (B)).
>
> • Engaging in conduct that would appear to a reasonable person to be coercive (Canon 3, Rule 3.1(D)).
>
> • Failing to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and avoiding impropriety and the appearance of impropriety (Canon 1, Rule 1.2).
>
> • Allowing social, political, financial or other interests or relationships to influence her judicial conduct or judgment (Canon 2, Rule 2.4(B)).
>
> • Failing to make administrative appointments on the basis of merit and avoiding nepotism, favoritism and unnecessary appointments (Canon 2, Rule 2.13(A)).
>
> • Failing to require her staff to act in a manner consistent with the judge's obligations under the Code of Judicial Conduct (Canon 2, Rule 2.12(A)).
>
> • Approving compensation of appointees beyond the fair value of services rendered (Canon 2, Rule 2.13(B)).
>
> • Failing to disqualify herself in any proceeding where her impartiality might reasonably be questioned (Canon 2, Rule 2.11(A)).
>
> • Failing to be patient, dignified, and courteous to those with whom the judge deals in an official capacity, and permitting similar conduct of others subject to her direction and control (Canon 2, Rule 2.8(B)).
>
> • Failing to cooperate and be candid and honest with judicial disciplinary agencies (Canon 2, Rule 2.16(A)).
>
> • Retaliating against a person known or suspected to have assisted or cooperated with an investigation of a judge (Canon 2, Rule 2.16(B)).
>
> [Judge Gentry's] conduct that violated these Canons

29

includes removing Michael Hummel from the GAL Panel because he did not support her judicial campaign as much as she wanted; having staff work on her campaign during office hours on paid time; requiring Meredith Smith to resign to make way for Stephen Penrose, a person with whom she had a romantic relationship and from the totality of the evidence, something significantly more than merely a "personal relationship," including saving and keeping in a hidden folder on her cellphone photographs of Mr. Penrose's genitals and a romantic message from Mr. Penrose; approving timesheets for numerous employees when [Judge Gentry] knew they were either working on her campaign or out of the office with her on personal matters, not court-related business, for extended periods of time; allowing employees to play music, musical instruments or sing in the office during work hours, thereby disrupting the work environment of other court employees; permitting employees to consume alcohol in Chambers and Mr. Penrose's office; twice participating in a purported prank to "simulate" sex in Mr. Penrose's office, which further disrupted the workplace and working relationship between her staff and other courthouse employees and personnel; putting Kelly Blevins' cases at the end of the docket because of a legitimate disagreement between them on how to handle certain cases; engaging in inappropriate conduct with [an attorney], who regularly appeared before [Judge Gentry], then failing to disqualify herself from [the attorney's] cases and creating at least the appearance of prejudice if not actual prejudice where any reasonable person might question her impartiality; permitting her relationship with Mr. Penrose to impair her judgment to the extent that she allowed him to engage in numerous instances of inappropriate conduct that offended social workers, attorneys, courthouse personnel, and school employees; filing a Bar Complaint in retaliation against an attorney who was known to have assisted or cooperated with the Commission's investigation; and perhaps most importantly, failing to be candid and honest with the Commission in its investigation and process on multiple occasions. [Judge Gentry] admitted that she was not candid and honest with the Commission regarding her relationship with Mr. Penrose, her treatment of Ms. Blevins, and her interaction with Ms. Schulz.

. . .

This case does not involve one or two isolated occurrences, but instead involves a pattern of misconduct and repeated exercise of extremely poor judgment – on and off the Bench – by [Judge Gentry] that continued for over a year, including after [Judge Gentry] was informed that a complaint was filed with the

Commission against her. As the Kentucky Code of Judicial Conduct provides in its Preamble, SCR 4.300, "Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest public confidence in their independence, impartiality, integrity, and competence." [Judge Gentry] failed in essentially every respect of this fundamental rule applicable to all judges. After proper notice and hearing, and based on the totality of the circumstances and evidence presented at the Final Hearing and the broad range of repeated and systemic misconduct by [Judge Gentry] over a substantial period of time, the Commission by a vote of 5-0 orders that [Judge Gentry] be removed from office.

Based on Judge Gentry's numerous violations of the Code of Judicial Conduct and her misconduct in office, we hold that the sanction of removal was appropriate.

## IV. CONCLUSION.

Based on the foregoing, the Judicial Conduct Commission's Final Order is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jeffrey Aaron Lawson
Franklin Todd Lewis
Lewis Law PLLC

COUNSEL FOR APPELLEE:

Bryan H. Beauman
Sturgill, Turner, Barker & Moloney PLLC

31